**Nasser U. Abujbarah (026182)**
The Law Offices of Nasser U. Abujbarah
7025 E. McDowell Road, Ste. 9
Scottsdale, Arizona 85257
Office: (480) 776-6846
Fax: (480) 776-6847
Email: Nasser@nualegal.com
*Attorney for Debtor*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Michael Donohue,<br><br>    Debtor. | In Proceedings Under<br><br>Ch. 11<br><br>Case No.: 2:10-bk-2446-RTB<br><br>**DEBTOR'S FIRST CHAPTER 11 PLAN OF REORGANIZATION** |

Michael Donohue (the "Debtor"), debtor-in-possession in the above captioned bankruptcy estate, submit to the Court and creditors of the Debtor's estate the following Plan of Reorganization (the "Plan"), pursuant to § 1121(a) of the Bankruptcy Code.

### I. DEFINITIONS

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined have the meanings ascribed to them in Section I of the Plan. Any terms used in the Plan that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below:

<u>Administrative Claim</u>: A Claim for payment of an administrative expense of a kind specified in 11 U.S.C. §§ 503(b) or 1114(e)(2) and entitled to priority pursuant to Code § 507(a)(1), including, but not limited to, (a) the actual, necessary costs and expenses, incurred

after the Petition Date, of preserving the bankruptcy estate and operating the Debtors' business, (b) all Allowed Claims of professionals appointed by the Bankruptcy Court, (c) all fees and charges assessed against the bankruptcy estate under 28 U.S.C.§ 1930, and (d) All Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under Code § 546(c)(2).

Allowed Claim:  Allowed Claim shall mean a Claim:

(a)    with respect to which a proof of claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 of the Rules of Bankruptcy Procedure and to which no objection to the allowance of the Claim has been filed by the Debtors or any other party or as to which any such objection has been determined by an order or judgment of the Court which is no longer subject to appeal and to which no appeal is pending, or,

(b)    Scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b), Rules of Bankruptcy Procedure, and not listed as disputed, contingent or un-liquidated as to the amount.

An Allowed Claim shall not include un-matured or post-petition interest, penalties, fees, or costs, unless specifically stated in the Plan.  Notwithstanding § 502(a) of the Code and Rules 3001 and 3003, for the purposes of the Plan, a Claim shall not be an Allowed Claim unless it satisfies the definition of Allowed Claim under this Plan.

Allowed Interest:  An Allowed Interest shall mean an Interest in the Debtors held by a person or entity, as of the Effective Date, and as to which Interest no objection has been made within the time allowed for the making of objections, or as to which such Interest is allowed by a final order, or an Interest as to which a timely and proper proof of interest has been filed, and as to which proof of interest no objection has been made within the time allowed for making objections.

Allowed Priority Claim:  The Allowed Claim of a Claimant that is entitled to priority in payment under 11 U.S.C. § 507(a)(2) through (a)(8).

Allowed Secured Claim:  An Allowed Claim to the extent that such Allowed Claim is secured by a lien which unavoidable, on property in which the estate has an interest, to the extent

of the value of such Creditor's interest in the estate's interest in such property as determined in light of the purpose of the valuation and of the proposed disposition and use of such property and determined as of the Petition Date.

Allowed Unsecured Claim: An Allowed Claim to the extent that such Allowed Claim is not secured by a lien on property in which the estate has an interest.

Ballot: Each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote as specified in this Plan in connection with the solicitation of acceptances of this Plan.

Bankruptcy Code: 11 U.S.C. § 101 et seq.

Bankruptcy Court: The United States Bankruptcy Court for the District of Arizona or any other court which may have jurisdiction over this case or any proceeding arising under, in, or relating to this case

Bankruptcy Rule: The Federal Rules of Bankruptcy Procedure as amended and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

Bar Date: The date, if any, designated by the Bankruptcy Court as the last date for filing Proofs of Claim or Interest against the Debtors.

Chapter 11: Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101, et seq.

Claim: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured or unsecured, which right arose or accrued prior to the date of Confirmation, or; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured, where such right arose or accrued prior to Confirmation, or; (c) a claim arising under 11 U.S.C. § 502(g).

Claimant or Creditor: Any person or entity that asserts a Claim.

Class: A category of holders of Claims or Interests as described in this Plan.

Confirmation: The signing by the Court of the Confirmation Order.

Confirmation Date:  The date upon which the Confirmation Order is entered upon the docket.

Confirmation Hearing:  The hearing held by the Bankruptcy Court regarding confirmation of the Plan, as it may be continued from time to time.

Confirmation Order:  The Order signed by the Bankruptcy Court pursuant to 11 U.S.C. § 1129 confirming the Plan.

Contingent Claim:  Any Claim for which a proof of claim has been filed with the Bankruptcy Court: (a) which was not filed in a sum certain, or which has not accrued and is dependent on a future event that has not occurred and may never occur, and (b) which has not been allowed on or before the Confirmation Date.

Court:  The United States Bankruptcy Court for the District of Arizona, which has jurisdiction in this case.

Debtors:  Michael Donohue

Disbursing Agent:  The Reorganized Debtors shall be the Disbursing Agent and shall make distributions to holders of Allowed Claims under the Plan.

Disclosure Statement:  The Debtors' disclosure statement and any amendments and supplements thereto as approved by n order of the Bankruptcy Court.

Disputed Claim:  A Claim which the Debtors listed as un-liquidated, disputed or contingent in its Schedules or to which an objection has been filed which has not been resolved by a final order of the Bankruptcy Court.

Effective Date:  30 days after the Confirmation Date.  If 30 days after the Confirmation Date falls on a weekend or a holiday, the Effective Date will be the first business day thereafter.

Excess Cash Flow:  Cash flow of the Debtors' post-petition income after deduction from their post-petition income as set forth in their Schedule I, all expenses as set forth in their Schedule J, including al payments to administrative, priority, and secured creditors.

Final Order:  An order or judgment which has not been stayed.

Impaired:  When used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Code § 1124.

Insider:  A person or entity within the definition contained at § 101(31) of the Bankruptcy Code.

Interest:  Any equity interest in the Debtors as of the Effective Date.

Interest Holder:  Any person or persons owning an Interest in the Debtors as of the Effective Date.

IRS:  Internal Revenue Service.

New Obligations:  Those debts of the Debtors which existed pre-confirmation, but which are modified by the confirmed Plan resulting in the creation of a new note.  The obligations for which the Reorganized Debtors have liability under the terms of the confirmed Plan.  Said new obligations shall be not considered in default unless and until the Reorganized Debtors default on said obligations after the Effective Date.

Oversecured:  The term describing the Allowed Claim of a secured Creditor when the value of the collateral securing said Allowed Claim exceeds the amount of the debt serving as the basis for said Allowed Claim.

Person:  Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated association or organization, governmental agency, or associated political subdivision.

Petition:  The original petition under Chapter 11.

Petition Date:  The date on which the Petition was filed, January 29, 2010.

Plan:  This Plan of Reorganization and any amendments or supplements thereto.

Plan Rate:  The rate of interest referred to in the Plan which is the prime rate.

Proof of Claim:  The proof of claim that must be filed by a holder of an Impaired Claim by the Bar Date.

Pro Rata:  The ratio of an Allowed Claim or Allowed Interest in a particular Class to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

Reorganized Debtor:  The Debtors after the Effective Date.

Tax Claim Rate:  The rate of interest, to be determined by the Bankruptcy Court at the Confirmation Hearing, that, when applied to the amount of an Allowed Priority Claim to be paid

in installments will result in such installments being of an aggregate value, as of the Effective Date, equal to the Allowed amount of such Claim, consistent with the requirements of 11 U.S.C. § 1129(a)(9). At the Confirmation Hearing, the Debtor will request the Court determine that the Tax Claim Rate is five percent per annum.

_Undersecured_: The term describing the Allowed Claim of a secured Creditor when the value of the collateral securing said Allowed Claim is less than the debt which serves as the basis of said Allowed Claims.

## II. CLASSIFICATION OF CLAIMS AND INTERESTS.

### A. **Priority Claims: Class 1**

Class 1-A consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(2) (Administrative Claims).

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(7) (Tenant Claims).

Class 1-C consists of Allowed Priority Claims Under 11 U.S.C. § 507(a)(8) (Tax Claims).

### B. **Secured Claims: Class 2**

Class 2-A consists of Maricopa County related to real property taxes on the Debtor's real properties in Maricopa County.

Class 2-B consists of the Allowed Secured Claim of ASC related to 3755 W. Claremont Street.

Class2-C consists of the Allowed Secured Claim of Aurora related to 1519 W. Osborn Road.

Class 2-D consists of the Allowed Secured Claim of CitiMortgage related to 22514 N. 37th Run.

Class 2-E consists of the Allowed Secured Claim of CitiMortgage related to 20278 N. 51st Drive.

Class 2-F consists of the Allowed Secured Claim of Wells Fargo Bank related to 20278 N. 51st Drive.

Class 2-G consists of the Allowed Secured Claim of Land America related to 1940 W. Amelia Ave.

Class 2-H consists of the Allowed Secured Claim of Land America related to 1944 W. Amelia Ave.

Class 2-I consists of the Allowed Secured Claim of The People's Bank related to 1 acre of land in Eatonton, Georgia.

Class 2-J consists of the Allowed Secured Claim of Fifth Third bank related to a 2006 Audi A4.

**C.    General Unsecured Claims: Class 3**

Class 3-A consists of the Allowed Unsecured Claims of Creditors of the Debtors.

**D.    Debtors' Interest: Class 4**

Class 4-A consists of the Allowed Interest of the Debtors.

**III. IMPAIRMENT OF CLASSES**

Classes 1-A, 1-B, 1-C, 2-A, 2-E, 2-J are unimpaired under the Plan. All other classes are impaired, as that term is defined in 11 U.S.C. § 1124.

**IV. TREATMENT OF CLASSES**

**A.  Priority Claims: Class 1**

**a.    Administrative Claims:1-A**

This Class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(2) (Administrative Claims) related to the Debtors. Unless they agree to an alternative form of treatment, the Allowed Claims of Class 1-A shall be paid in full, in cash, by the earlier of the Effective Date or the date that such are allowed and ordered paid by the Court. Any Class 1-A Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class. The Allowed Administrative Claim of counsel for the Debtors that has not been paid as of the Effective Date, shall be paid in monthly payments of principal and interest, with interest at 0% until paid in full.

**b.    Tenant Claims: 1-B**

This class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(7) relating to tenant security deposits, which includes: unsecured claims of individuals, to the extent of $2,600 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property for the personal, family, or household use of such individuals, that were not delivered or provided. To the extent the Debtors retain a property and that any tenant has provided the Debtors a deposit relating to the lease of any real property that falls within the $2,600 debt limitations, the tenant's deposit rights shall be preserved and the Debtors shall perform and act within the deposit in accordance with the terms of the pre-petition lease. Any deposit that exceeds $2,600 dollar limitation or definitional limitations set forth in 11 U.S.C. § 507(a)(7) shall be treated as a general unsecured claim under Class 3-A. Claims under

### c. **Tax Claims: 1-C**

This Class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(8)-tax claims.

The Arizona Department of Revenue (ADOR) filed a priority Proof of Claim in the amount of $4,624.39.

The Internal Revenue Service (IRS) has filed a priority Proof of Claim in the amount of $22,119.

Any remaining balance owing to the IRS and ADOR after offsetting any tax refunds, for any years, shall be paid a pro-rata amount of the Debtors' Excess Cash Flow, in monthly payments, over a period of five (5) years from the Petition Date. Any claims of the IRS or ADOR remaining unpaid will be deemed satisfied and discharged.

The failure of the Debtor to comply with the provisions of the Plan concerning liability owed to the IRS and ADOR that includes, but is not limited to, the failure to make the full and timely payments provided for herein, shall constitute a default of the Plan. If the Debtors fail to cure the default within twenty (20) days after written notice of the default from the IRS or ADOR or their agents, the entire balance due to the IRS or ADOR shall be immediately due and owing. Further, in the event of a default, the IRS or ADOR may enforce its

claim, exercise any and all rights and remedies available under applicable non-bankruptcy law that includes, but is not limited to, collection procedures, and any other relief as may be deemed appropriate by the Bankruptcy Court.

**B.  Secured Claims: Class 2**

**a.  Maricopa County: Class 2-A**

This Class consists of the Allowed Secured Claim held by Maricopa County for real property taxes owing on the Debtors' properties located in Maricopa County.  Maricopa County will retain its liens on properties and will be paid its Allowed Secured Claim as follows:

The Debtors' Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and this the Debtors will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtors will execute a deed in lieu of foreclosure to expedite this transfer.  As to each property where the Debtors retain ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due, (c) the Reorganized Debtors shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtor may prepay any of these Allowed Secured Claims at any time without penalty.  As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtor will have no further liability for these taxes upon the foreclosure by the secured creditor.

**b.  ASC: Class 2-B**

This class consists of the Allowed Secured Claim of ASC (hereby referred to as "Lender") related to Debtor's real property located at 3755 W. Claremont Street, Phoenix, Arizona.  The Debtor anticipates he will reach a stipulation with Lender as to the value of its

Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Debtor asserts that Lender is in first position on the property junior only to real property taxes. The Debtor believe that the current value of the property is $85,900.00 based upon a CMA. Lender holds a first position lien in the amount of $114,958. Lender's allowed secured claim amount shall be allowed at the current fair market value of the property minus all senior secured liens. As such, Lender's Allowed Secured Claim is $85,900. This obligation will be re-amortized at the Allowed Secured Claim and paid with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over thirty years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payments, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtors may prepay this obligation without penalty at any time. Lender shall release its lien in the property once its Allowed Secured Claim has been paid. The Debtors may sell the property at anytime without penalty so long as the balance owing to Lender's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Lender's Allowed Secured Claim shall be treated in accordance with Class 3-A.

    **c. Aurora: Class 2-C**

        This class consists of the Allowed Secured Claim of Aurora (hereby referred to as "Lender") related to Debtor's real property located at 1519 W. Osborn Road, Phoenix, Arizona. The Debtor anticipates he will reach a stipulation with Lender as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Debtor asserts that Lender is in first position on the property junior only to real property taxes. The Debtor believe that the current value of the property is $63,000.00 based upon a CMA. Lender holds a first position lien in the amount of $135,162.28. Lender's

allowed secured claim amount shall be allowed at the current fair market value of the property minus all senior secured liens. As such, Lender's Allowed Secured Claim is $63,000. This obligation will be re-amortized at the Allowed Secured Claim and paid with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over thirty years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payments, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtors may prepay this obligation without penalty at any time. Lender shall release its lien in the property once its Allowed Secured Claim has been paid. The Debtors may sell the property at anytime without penalty so long as the balance owing to Lender's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Lender's Allowed Secured Claim shall be treated in accordance with Class 3-A.

  **d. CitiMortgage: Class 2-D**

    This class consists of the Allowed Secured Claim of CitiMortgage (hereby referred to as "Lender") related to Debtor's real property located at 22514 N. 37th Run, Phoenix, Arizona. The Debtor anticipates he will reach a stipulation with Lender as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Debtor asserts that Lender is in first position on the property junior only to real property taxes. The Debtor believes that the current value of the property is $408,790.00 based upon a CMA. Lender holds a first position lien in the amount of $640,123.74. Lender's allowed secured claim amount shall be allowed at the current fair market value of the property minus all senior secured liens. As such, Lender's Allowed Secured Claim is $408,790. This obligation will be re-amortized at the Allowed Secured Claim and paid with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over thirty years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payments, the escrow account will remain in place for the payment of real

property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtors may prepay this obligation without penalty at any time. Lender shall release its lien in the property once its Allowed Secured Claim has been paid. The Debtors may sell the property at anytime without penalty so long as the balance owing to Lender's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Lender's Allowed Secured Claim shall be treated in accordance with Class 3-A.

   **e.   CitiMortgage: Class 2-E**

   This class consists of the Allowed Secured Claim of ASC (hereby referred to as "Lender") related to Debtor's real property located at 3755 W. Claremont Street, Phoenix, Arizona. The Debtor anticipates he will reach a stipulation with Lender as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Debtor asserts that Lender is in first position on the property junior only to real property taxes. The Debtor believes that the current value of the property is $197,500.00 based upon a CMA. Lender holds a first position lien in the amount of $196,979. Lender's Allowed Secured Claim is $196,979. This obligation will be re-amortized at the Allowed Secured Claim and paid with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over thirty years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payments, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtors may prepay this obligation without penalty at any time. Lender shall release its lien in the property once its Allowed Secured Claim has been paid. The Debtors may sell the property at anytime without penalty so long as the balance owing to Lender's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Lender's Allowed Secured Claim shall be treated in accordance with Class 3-A.

   **f.   Wells Fargo Bank: Class 2-F**

This class consists of the Allowed Secured Claim held by Wells Fargo Bank, which is secured by a Deed of Trust on the property located at 20278 N. 51st Run, Glendale, AZ. The Debtor anticipates he will reach a stipulation with Wells Fargo as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Debtor asserts that Wells Fargo is in second position on the property. Debtors believe the value of the property is $197,500 based upon a CMA. Wells Fargo's Allowed Secured Claim shall be allowed at the current value of the property minus all senior secured claims. As such, Wells Fargo Bank's Allowed Secured Claim is $0. Wells Fargo Bank shall immediately release its lien on the property on the Effective Date. The balance of Wells Fargo Bank's Allowed Secured Claim shall be treated in accordance with Class 3-A.

### g. Land America: Class 2-G

This class consists of the Allowed Secured Claim of Land America (hereby referred to as "Lender") related to Debtor's real property located at 1940 W. Amelia Ave., Phoenix, Arizona. The Debtor anticipates he will reach a stipulation with Lender as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Debtor asserts that Lender is in first position on the property junior only to real property taxes. The Debtor believe that the current value of the property is $93,000.00 based upon a CMA. Lender holds a first position lien in the amount of $250,000. Lender's allowed secured claim amount shall be allowed at the current fair market value of the property minus all senior secured liens. As such, Lender's Allowed Secured Claim is $93,000. This obligation will be re-amortized at the Allowed Secured Claim and paid with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over thirty years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payments, the escrow account will remain in place for the payment of real property

taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtors may prepay this obligation without penalty at any time. Lender shall release its lien in the property once its Allowed Secured Claim has been paid. The Debtors may sell the property at anytime without penalty so long as the balance owing to Lender's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Lender's Allowed Secured Claim shall be treated in accordance with Class 3-A.

### h. Land America: Class 2-H

This class consists of the Allowed Secured Claim of Land America (hereby referred to as "Lender") related to Debtor's real property located at 1944 W. Amelia Ave., Phoenix, Arizona. The Debtor anticipates he will reach a stipulation with Lender as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Debtor asserts that Lender is in first position on the property junior only to real property taxes. The Debtor believes that the current value of the property is $73,100.00 based upon a CMA. Lender holds a first position lien in the amount of $88,997.36. Lender's allowed secured claim amount shall be allowed at the current fair market value of the property minus all senior secured liens. As such, Lender's Allowed Secured Claim is $73,100. This obligation will be re-amortized at the Allowed Secured Claim and paid with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over thirty years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payments, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtors may prepay this obligation without penalty at any time. Lender shall release its lien in the property once its Allowed Secured Claim has been paid. The Debtors may sell the property at anytime without penalty so long as the balance owing to Lender's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Lender's Allowed Secured Claim shall be treated in accordance with Class 3-A.

### i. The People's Bank: Class 2-I

This class consists of the Allowed Secured Claim of The People's Bank (hereby referred to as "Lender") related to Debtor's 1 acre of land in Eatonton, GA. The Debtor anticipates he will reach a stipulation with Lender as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the terms of the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Debtor asserts that Lender is in first position on the property junior only to real property taxes. The Debtor believes that the current value of the property is $70,00 based upon his knowledge of properties in the area and recent sales. Lender holds a first position lien in the amount of $16,790. As such, Lender's Allowed Secured Claim is $16,790. This obligation will be re-amortized at the Allowed Secured Claim and paid with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over thirty years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payments, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtors may prepay this obligation without penalty at any time. Lender shall release its lien in the property once its Allowed Secured Claim has been paid. The Debtors may sell the property at anytime without penalty so long as the balance owing to Lender's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Lender's Allowed Secured Claim shall be treated in accordance with Class 3-A.

### j. Fifth Third Bank: Class 2-J

This class consists of the Allowed Secured Claim of Fifth Third Bank that is secured by an automobile loan on a 2006 Audi A4. The Debtor anticipates he will reach a stipulation with Fifth Third Bank as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Fifth Third Bank filed

a secured proof of claim in the amount of $29,807. The Debtor adopts Fifth Third Bank's value of its Allowed Secured Claim. Fifth Third Bank will retain its first position lien on the vehicle and will be paid as follows: This obligation will be re-amortized at the Allowed Secured Claim as of the Effective Date. The Debtor will pay Fifth Third Bank's Allowed Secured Claim in equal monthly payments of principal and interest, with interest at 5% per annum, amortized over three years. Once the Allowed Secured Claim has been paid, Fifth Third Bank shall release its lien on the vehicle and receive no further payment on its Allowed Secured Claim. The Debtor may pre-pay this obligation without penalty at any time. The balance of Fifth Third Bank's Allowed Secured Claim shall be treated in accordance with Class 3-A.

**C. Unsecured Claims: Class 3**

　　**a. General Unsecured Claims: Class 3-A**

　　　　Class 3-A consists of the Allowed Unsecured Claims of Creditors. Class 3-A Creditors shall be paid a pro-rata share from the Debtors' Excess Cash Flow, on a quarterly basis, in an amount sufficient to fund the value of the Debtors' Liquidation Equity (as calculated in the Debtors' Disclosure Statement), after all senior Allowed Claims have been paid in accordance with the terms of the Plan. Any Allowed Unsecured Claims that are determined to be non-dischargeable will continue to receive a pro-rata distribution of the Excess Cash Flow until satisfied in full.

**D. Debtors' Interest: Class 4**

　　**a. Debtors' Interest: Class 4-A**

　　　　Pursuant to §1129(a)(15) and (b)(2)(B)(ii) of the Bankruptcy Code, the Debtors shall retain their interest in all estate property in consideration of their funding of Allowed Claims and shall receive all exempt property.

**V. MEANS FOR EXECUTING THE PLAN**

　　**A. Funding**

　　　　Pursuant to § 1123(a)(8) of the Bankruptcy Code, the Debtors shall provide for the payment to creditors under the Plan of all or such portion of earnings from personal services performed by the Debtors after the commencement of the case or other future income of the

Debtors as is necessary for the execution of the Plan. The Debtors will contribute their Excess Cash Flow in an amount sufficient to fund the value of their Liquidation Equity.

### B. Liquidation of Estate Property

The Debtors shall have the authority to retain such brokers, agents, counsel, or representatives, as they deem necessary to liquidate all assets of the bankruptcy estate. Prior to Confirmation, the Debtors shall sell their Real Property pursuant to an order of the Bankruptcy Court to the highest and best bidder. Any sales which occur post-confirmation shall not require approval of the Bankruptcy Court for the sale, although the Debtors will be free to see such order if it deems appropriate.

### C. Management

The Reorganized Debtor will continue to operate under the same management structure utilized prior to Confirmation.

### D. Disbursing Agent

The Reorganized Debtor shall act as the Disbursing Agent under the Plan.

### E. Documentation of Plan Implementation

In the event any entity which possesses an Allowed Secured Claim or any other lien in any of the Debtors' property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtors may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of any necessary new liens to satisfy the terms of the Plan. If the Debtors deem advisable, they ay obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

### VI. EFFECT OF CONFIRMATION

Because the Debtors are individuals, pursuant to § 1141(d)(5) of the Bankruptcy Code, Confirmation of the Plan does not provide the discharge for the debtors. The Debtors will move for the entry of a final decree after the Debtors have provided for the implementation of the Plan, and the final decree will contain the language providing the Debtors their discharge and such

final decree will discharge any and all debts of the Debtors, that arose any time before the entry of the Confirmation Order, including, but not limited to, all principal and all interest accrued thereon, pursuant to § 1141(d) of the Bankruptcy Code. The discharge shall be effective as to each Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of the Debtors dealt with in this Plan shall be considered New Obligations of the Debtors, and these New Obligations shall not be considered in default unless and until the Reorganized Debtors default on the New Obligation pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtors and, once the Plan is confirmed, the only obligations of the Debtors shall be such New Obligations as provided for under the Plan.

## VII. OBJECTIONS TO AND ESTIMATIONS OF CLAIMS

### A. Objections and Bar Date for Filing Objections.

As soon as practicable, but in no event later than 120 days after the Effective Date, objections to Claims shall be filed with the Bankruptcy Court and served upon the Debtors and the holders of each of the Claims to which objections are made pursuant to the Bankruptcy Code and the Bankruptcy Rules. Objections filed after such date will be barred.

### B. Settlement of Claims.

Settlement of any objection to a Claim not exceeding $10,000.00 shall be permitted on the eleventh (11th) day after notice of the settlement has been provided to the Debtors, the Creditors, the settling party, and other persons specifically requesting such notice, and if on such date there is no written objection filed, such settlement shall be deemed approved. In the event of a written objection to the settlement, the settlement must be approved by the Court on notice to the objecting party.

### C. Estimation of Claims.

For purposes of making distributing provided for under the Plan, all Claims objected to shall be estimated by the Disbursing Agent at an amount equal to (i) the amount, if

any, determined by the Court pursuant to § 502(c) of the Bankruptcy Code as an estimate for distribution purposes; (ii) an amount agreed to between the Debtor and the Claimant; or, (iii) that amount set forth as an estimate in the Plan or Disclosure Statement. Notwithstanding anything herein to the contrary, no distributions shall be made on account of any Claim until such Claim is an Allowed Claim.

### D. Unclaimed Funds and Interests

Distribution to Claimants shall be mailed by the Reorganized Debtor to the Claimants at the address appearing on the master mailing matrix unless the Claimant provides the Reorganized Debtors with an alternative address. For a period of one year from the date that a distribution was to be made by disbursing agent but has gone uncollected by the Claimant, the disbursing agent shall retain any distributions otherwise distributable hereunder which remain unclaimed or as to which the disbursing agent has not received documents required pursuant to the Plan. Thereafter, the unclaimed funds shall revest in the Reorganized Debtors.

### VIII. NONALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under this Plan on account of, and no other Allowed Claim, whether secured, unsecured, administrative, or priority, shall include any fine, penalty, exemplary or punitive damages, late charges, default interest or other monetary charges relating to or arising from any default or breach by the Debtors, and any claim on account thereof shall be deemed disallowed, whether or not an objection was filed to it.

### IX. CLOSING OF CASE

Until this case is officially closed, the Reorganized Debtors will be responsible for filing pre and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the Unites States Trustee, in cash, pursuant to 20 U.S.C. § 1930, as amended. Pursuant to 11 U.S.C. § 1129(a)(12), all fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

### X. MODIFICATION OF THE PLAN

In addition to their modification rights under § 1127 of the Bankruptcy Code, the Debtors may amend or modify this Plan at any time prior to Confirmation without leave of the Court. The Debtors may propose amendments and/or modifications of this Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtors may, with approval of the Court, as long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of this Plan.

**XI.    JURISDICTION OF THE COURT**

The Court will retain jurisdiction until this Plan has been fully consummated for including, but not limited to, the following purposes:

1. The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtors to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtors' rights to object to or to re-examine the Claim in while or in part.

2. To determine any Claims which are disputed by the Debtors, whether such objections are filed before or after Confirmation, to estimate any Unliquidated or Contingent Claims pursuant to 11 U.S.C. §502(c)(1) upon request of the Debtor or any holder of a Contingent or Unliquidated Claim, and to make determination on any objection to such Claim.

3. To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtors and any other party, including but not limited to, any rights of the Debtors to recover assets pursuant to the provisions of the Bankruptcy Code.

4. The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in this Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan.

5. The modification of this Plan after Confirmation, pursuant to the Bankruptcy Rules and Bankruptcy Code.

6. To enforce and interpret the terms and conditions of this Plan.

7. The entry of an order, including injunctions, necessary to enforce the title, rights, and powers of the Debtors, and to impose such limitations, restrictions, terms and conditions of such title, right and power that this Court may deem necessary.

8. The entry of an order concluding and terminating this case.

## XII.    RETENTION AND ENFORCEMENT OF CLAIMS

Pursuant to § 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce any and all claims of the Debtors, except those claims specifically waived herein.

## XIII.    EXECUTORY CONTRACTS

Assuming the Debtors retain ownership of the related real property, the Debtors assume the leases with the tenants relating to the real property (and if the Debtors do not retain ownership then the Debtors reject the lease of the related real property), and reject all executory contracts and unexpired leases not otherwise assumed herein or by separate order of the Court. Claims for any executory contracts or unexpired leases rejected by the Debtors shall be filed no later than 10 days after the earlier of Confirmation or the date the executory contract or unexpired lease is specifically rejected.  Any such Claims not timely filed and served shall be disallowed.

## XIV.    REVESTING

Except as provided for in the Plan or in the Confirmation Order, on the Effective Date the Reorganized Debtors shall be vested with all the property of the estate free and clear of all claims, liens, charges, and other interest of Creditors, arising prior to the Effective Date.  Upon the Effective Date, the Reorganized Debtors shall operate their business free of any restrictions.

RESPECTFULLY SUBMITTED this 30th day of November 2010.

**The Law Offices of Nasser U. Abujbarah**

/s/ Nasser U. Abujbarah

Nasser U. Abujbarah
The Law Offices of Nasser U. Abujbarah
7025 E. McDowell Road, Ste. 9
Phoenix, Arizona 85257