Thomas P. Kack, Esq./#007110
**MUSGROVE, DRUTZ & KACK, P.C.**
1135 Iron Springs Road
Post Office Box 2720
Prescott, AZ   86302
Phone:  (928) 445-5935
Fax: (928) 445-5980
Email: tkack@cableone.net
*Attorneys for Movant/Creditor*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>MICHAEL S. DONOHUE,<br><br>Debtor. | In Proceedings Under<br><br>Chapter 11<br><br>Case No. 2-:10-bk-02446-RTB<br><br>**STIPULATION FOR MODIFICATION TO PLAN**<br>**(Settlement Regarding Objection to Notice and Confirmation Reports, Notification of Lack of Due Process and Request for Ruling That Plan is not Binding on Creditor)** |

The parties hereto, secured first lien creditor, Roger Iossi and Jacqueline Iossi, as Trustees of the Iossi Family Trust ("Iossi"), second lien creditors Linda Thunn and Debtor Michael S. Donohue ("Debtor") through their counsel undersigned, recite and stipulate as follows:

**RECITALS**

1.      Iossi is the secured first lien creditor on the property described in the attached Agreement for Sale and Modification to Agreement For Sale And Assumption Agreement (the

1

"Modification Agreement"), which are attached hereto as Exhibits A and B respectively. To be clear, Iossi is the first lien creditor, subject only to real property taxes, on the property known as 1940, 1940 1/2, 1942, 1942 1/2, 1944, 1946, and 1948 West Amelia Avenue, Phoenix, Arizona.

2. Linda Thunn is secured as a second lien creditor on the property pursuant to the Agreement for Sale and Modification to Agreement For Sale And Assumption Agreement.

3. Iossi allege they received no Notice of the Debtor's bankruptcy until over one month after Debtor's Chapter 11 Plan was confirmed. Iossi allege they were prejudiced by the lack of notice.

4. Linda Thunn alleges she received no Notice of the Debtor's bankruptcy until over one month after Debtor's Chapter 11 Plan was confirmed. Linda Thunn alleges she was prejudiced by the lack of notice.

5. The parties desire to settle disputes between them, including that Iossi and Thunn shall waive any claim of lack of Due Process or that they are not bound by the terms of the Plan, subject to and conditioned upon the modification of the Debtor's First Chapter 11 Plan of Reorganization and the Stipulated Order Confirming Chapter 11 Plan being amended and approved by Order of this Court as more fully set forth in the terms of this Stipulation.

NOW THEREFORE, the parties stipulate as follows:

1. The Recitals set forth above are incorporated herein by this reference.

2

Case 2:10-bk-02446-EPB   Doc 85   Filed 08/09/11   Entered 08/09/11 09:59:59   Desc
Main Document    Page 2 of 12

2. Iossi and Thunn shall be bound by the terms of Debtor's First Chapter 11 Plan of Reorganization and the Stipulated Order confirming Chapter 11 Plan subject to the nunc pro tunc amendment of said Plan by this Stipulation and an Order of the Bankruptcy Court consistent with the following, that:

A. Iossi is the first lien holder on the entire parcel of property and improvements thereon set forth in Exhibits A and B hereto and located at 1940, 1940 1/2, 1942, 1942 1/2, 1944, 1946, and 1948, West Amelia Avenue, Phoenix, Arizona (the "Property").

B. The current value of the property is $240,000.

C. Sums owed by Debtor to Iossi in excess of $240,000.00 shall be deemed waived in the event Debtor pays sum of $240,000.00 on the terms set forth in the Plan and as amended herein. The $240,000.00 due Iossi shall be paid with interest at 6.75% per annum from April 1, 2011, amoritized over a 22 year period and resulting in payments of $1,747.45 per month. Any unpaid balance of principal and interest due shall be fully due and payable on the 15th year anniversary of June 1, 2011. The first payment is due June 1, 2011.

D. "The Plan at VIII treatment of Classes", shall be deemed amended: to reflect: "g. Iossi Family Trust Class 2-G;" and is amended consistent with the provisions set forth above and to delete the remaining provisions. Debtor's Plan treatment of the Iossi Family Trust Class 2-G

3

claim shall include that Debtor's obligations under the Agreement and Modification Agreement are further modified as follows:

 i. Funds necessary for the payment of real property taxes and insurance will be added to the monthly payments and paid through the collection account to Servicing Agent, presently Loan Care. The Debtor may prepay the obligation due Iossi without penalty at any time. Iossi shall release its lien on the property once its allowed secured claim has been paid in full. The Debtors may sell the property at any time without penalty so long as the balance owing to lender is paid through sale proceeds.

 ii. Payments are due on the first day of the month. Any payment not received by the Servicing Agent by the 10th day of the month shall be subject to a late fee of 10% of the payment ($180.48). Seller may, in Seller's sole discretion, reject a payment received by Servicing Agent without a late fee or may accept such payment without waiving the late fee and the late fee shall be due and payable with the next monthly payment and, if not paid, Seller, in Seller's sole discretion may: declare a default and proceed with Seller's remedies or direct Servicing Agent that the late fee be added to the principal.

 iii. Except as provided above, Debtor shall not be in default for failure to pay a monthly payment if the payment (with applicable late payment fee) is received by the Servicing Agent by the 25th day of the day of the month in which it is due. This grace clause does not apply

4

to non-monetary defaults. The acceptance by seller of late payments received by the Servicing Agent by the 25th day of any given month, or even seven (7) days thereafter, shall not waive the time of the essence clause applicable to the Agreement and the Modification Agreement.

E. The stay is lifted to allow enforcement of the Agreement for Sale and Modification Agreement in event of default by Debtor of payments or other performance due to Iossi under such agreements as modified by this Stipulation. In event of such default Iossi and Thunn shall be allowed to enforce the Agreement for Sale and Modification to Agreement for Sale and Assumption Agreement as allowed under Arizona law.

F. Thunn shall retain her second lien position on the Property under the Modification Agreement which shall be terminated without further action when Debtor is discharged upon the first to occur of completion of his Plan or otherwise (which shall also terminate personal liability to Thunn) or upon release of Iossi's lien on the Property.

Respectfully submitted this 8th day of ~~July~~ August, 2011.

MUSGROVE, DRUTZ & KACK, P.C.

By /S/
Thomas P. Kack
*Attorneys for Movants/Creditors*

5

CHARLES L. FIRESTEIN, P.C.

By  /S/
Charles L. Firestein
*Attorneys for Debtor Michael S. Donohue*

STEPHEN M. COLLINS

By  /S/
Stephen M. Collins
Attorney for Creditor Linda Thunn

COPY mailed this 8th day of July, 2011, to:
AUGUST

U.S. Trustee
Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003
Trustee

All parties listed on the Master Mailing List

By: [signature]

6

#0401
**CAPITAL TITLE AGENCY INC.**

When Recorded, mail to:

Richard V. Mack, Esq.
MACK & ASSOCIATES, P.C.
2575 E. Camelback Road, Suite 870
Phoenix, AZ 85016

0103005



OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2003-0125538 01/31/03 16:54
51 OF 126
LUCERIC

## AGREEMENT FOR SALE

THIS AGREEMENT AND CONTRACT, made this _31_ day of _Jan_, 2003, between Roger Iossi and Jacqueline Iossi, husband and wife, herein called SELLER, whose address is: 275 Canyon Shadows Drive, Sedona, Arizona 86336, and Linda Thunn, a single woman, as her sole and separate property, herein called PURCHASER, whose address is: 2206 N. Edgemere, Phoenix, Arizona 85006.

WITNESSETH:

That Seller in consideration of the covenants and agreements of Purchaser hereunder, agrees to sell and convey to Purchaser, and Purchaser agrees to buy, all that certain real property, together with all and singular the rights and appurtenances (including all buildings, improvements, and fixtures thereon), located in Maricopa County, State of Arizona, described as follows:

    LOTS Twelve (12) and Thirteen (13), WEST BUGLE, according to the plat of record in the office of
    the County Recorder of Maricopa County, Arizona, in Book 46 of Maps, page 13.

(1)     For the sum of THREE HUNDRED FIFTEEN THOUSAND DOLLARS ($315,000.00) ("Purchase Price"), lawful money of the United States, and Purchaser agrees in consideration of the premises to pay said sum in the following manner:

    (a)     Prior to the date hereof, Purchaser shall have paid the sum of $6,000.00 as earnest money to be applied against the Purchase Price.

    (b)     As of the date of this Agreement, Purchaser shall have paid to Seller the additional sum of $29,000.00 to be applied against the Purchase Price, leaving a balance to be paid in accordance with the terms hereof in the amount of $280,000.00, as follows:

        (i)     Purchaser shall make monthly payments of principal and interest in the amount of $2,200.00, beginning on March 1, 2003, and monthly thereafter on the first day of the month (and continuing until March 1, 2005, at which time the monthly installments shall increase to $2,400.00 until fully paid. Such payment amounts are determined by amortizing the Purchase Price over a thirty (30) year amortization and applying an annual percentage rate of interest of eight percent (8%) per annum from January 31, 2003.

        (ii)     In addition to and together with the installment provided above, Purchaser agrees to pay to the Account Servicing Agent an amount equal to one-twelfth (1/12th) of the annual real estate taxes, hazard or other insurance premiums (unless otherwise paid to a homeowner's association), and special assessment(s) applicable to the subject Property or any increase required for payment of any new assessment(s) levied against the subject Property during the life of this obligation (or the underlying obligation). The Account Servicing Agent is authorized and directed to pay the property taxes and hazard insurance premiums when they become due. In the event of an increase or decrease in the taxes or insurance, the payment shall be adjusted accordingly. Purchaser agrees to provide the Account Servicing Agent with any and all information regarding the property taxes and hazard insurance. Purchaser shall keep Property insured against hazardous loss in an amount not less than $335,000.00 and maintain liability insurance in connection with the Property in an amount not less than $1,000,000.00, both with an insurance company to be approved by the Seller. Seller shall be named an additional insured on said Property.

        (iii)     Payments shall be due on the first day of the month and subject to late fee (for the extra cost of collection incurred) in the amount of $250.00, if not received by the Servicing Agent by 5:00 p.m. of the tenth calendar day of the month for which it is due. From and after the date upon which the entire amount hereunder shall become fully due and payable (whether by maturity or by any acceleration of such due date by reason of a default hereunder), the sum of $100.00 per day following such due date until all amounts owing are paid in full. Such daily payment is to compensate for the extra administrative expense of administering such payment and for the loss of use of funds and income potential by reason of such delay. All late charges received (if any) shall be first paid toward any

late charges due on the Superior Note (later defined), and any remainder to Seller. Notwithstanding the terms in the Addendum which is a part of this Agreement, any late charges, prepayment penalty or default interest which may become due on the Superior Note shall remain the obligation of the Seller, and the Account Servicing Agent is held harmless by Seller for any repercussions or liabilities; and any such obligations shall remain those of the Seller.

(iv) Purchaser is aware that Servicing Agent has been irrevocably instructed not to accept any partial payment nor accept any payment unless all amounts then due and owing, including all late fees, hereunder are then current and not in default.

(v) Purchaser is aware that underlying encumbrances against the Property exist and that this Agreement constitutes a "Wrap-Around" Agreement for Sale and the Purchase Price obligation is an all-inclusive obligation that includes (1) the Agreement For Sale between John M. Hammons and Karen A. Hammons, husband and wife and Benjamin A. Rathke and Linda K. Rathke, husband and wife, recorded March 25, 1991 in Docket 15111, page 553 (hereinafter the "Hammons Agreement For Sale") and (2) the encumbrance created by the Deed of Trust executed by Roger L. Iossi and Jacqueline B. Iossi, husband and wife as Trustor to John Walker Richmond and Lois Mari Richmond, Trustee of the Richmond Family Trust, as Beneficiary and First American Title as Trustee, dated February 12, 1997 and recorded March 5, 1997 in Document No. 97-0144477 (hereinafter the "Walker Deed Of Trust"). The Hammons Agreement For Sale and the Walker Deed of Trust will remain as encumbrances against the Property and shall remain the obligation of Seller hereunder, and payments thereon shall be made through the Servicing Account established with Servicing Agent hereunder.

(vi) Without the written consent of Seller, Purchaser shall not cause the Property to be further encumbered nor shall Purchaser assign, transfer or convey any right, title or interest under this Agreement or in the Property to any person. If Purchaser further encumbers the Property or assigns, transfers or conveys the Property without the written consent of Seller, all sums secured by this Agreement shall become immediately due and payable to Seller. There shall be a prepayment penalty of 20% of the unpaid balance in the event of a prepayment in part or in full prior to February 1, 2013.

(2) Purchaser shall keep said property in good condition and repair; shall not remove or demolish any building thereon, shall complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and shall pay when due all claims for labor performed and materials furnished therefore; shall comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; shall not commit or permit waste thereof; shall not commit, suffer or permit any act upon said property in violation or law; shall cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerated herein not excluding the general.

(3) Purchaser shall keep all improvements now or hereafter erected on said property continuously insured against loss by fire or other hazards in an amount not less than the total obligation secured hereby. All policies shall be held by the Seller and be in such companies as the Seller may approve and have loss payable first to the Seller as his interest may appear and then to the Purchaser. The amount collected under any insurance policy may be applied upon any indebtedness hereunder and in such order as the Seller may determine or at option of the Seller the entire amount so collected or any part thereof may be released to Purchaser. Such application or release shall not cure or waive any default hereunder nor cause discontinuance of any action that may have been or may thereafter be taken by Seller because of such default.

(4) Purchaser shall appear in and defend any action or proceeding purporting to affect the rights or powers of the Seller and shall pay all costs and expenses of Seller, including cost of evidence of title and attorney's fees in a reasonable sum in such action or proceeding in which Seller may appear, and in any suit brought by Seller due to any default under this Agreement.

(5) Purchaser shall pay at least ten (10) days before delinquency all assessments affecting said property; when due (excepting those to be paid as provided in paragraph 1 above), all encumbrances, charges and liens, with interest, on property or any part thereof, which appear to be prior or superior hereto; when due, all costs, fees and expenses of this Agreement.

FROM :  FAX NO. : Jan. 21 2009 03:43PM P5

(6) Should Purchaser fail to make any payment or to do any act as provided in this Agreement, then the Seller but without obligation so to do and without notice to or demand upon Purchaser and without releasing Purchaser from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Seller being authorized to enter upon such property for such purposes; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees. Purchaser shall pay immediately and without demand all sums so expended by Seller, with interest from date of expending at the rates provided in this Agreement. Regardless of whether Seller advances funds or takes action to cure Purchaser's default, Seller may add said amounts to the total due under this Agreement and exercise all available forfeiture rights as set forth in paragraph 10 below.

(7) That any award of damages in connection with any condemnation or any such taking, or for injury to the property by reason of public use, or for damages for private trespass or injury thereto, is assigned and shall be paid to Seller to be applied against the obligations evidenced hereby (reserving unto the Purchaser; however, the right to sue therefore and the ownership thereof subject to this Agreement) and upon receipt of such monies, Seller may apply or release the same in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(8) That time is of the essence of this Agreement, and that by accepting payment of any sum after its due date, Seller does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(9) That Purchaser may enter into possession of the Property and continue in such possession for and during the life of this Agreement except that during the period of any default by Purchaser under the Agreement, Purchaser hereby gives to and confers upon Seller the right, power and authority during the continuance of such default under this Agreement, to collect the property income, reserving unto Purchaser the right, prior to any default by Purchaser in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such property income as it becomes due and payable. Upon such default, Seller may at any time without notice, either in person by agent, or by a receiver to be appointed by a court the solvency of the Purchaser, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such property income, including that past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon taking possession of said property. The collection of such property income and the application therefore as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(10) Should Purchaser default in making any payment or in fulfilling any obligation hereunder, Seller may elect to bring an action for specific performance or to enforce a forfeiture in any lawful manner, including but not limited to, forfeiture by notice as provided in Arizona Revised Statues (A.R.S.) § 33-741 through 749. Forfeiture by notice may be enforced after default only after the expiration of the statutory time provided in A.R.S. § 33-742D, it being understood and agreed that the amount paid upon this Agreement or any other security instrument agreed to be paid by Purchaser shall be computed as provided in A.R.S. § 33-742E.
Should Purchaser default in performing any obligation under this Agreement, Seller may elect to accelerate the obligations due under this Agreement and declare all sums immediately due and payable and proceed to foreclose the Agreement pursuant to A.R.S. § 33-748, or pursue any other remedy available to Seller in law or equity.
If Seller elects to forfeit this Agreement by notice, Seller shall do so by delivering to Account Servicing Agent a written "Notice of Election to Forfeit" directed to Purchase together with Account Servicing Agent's established fee for such services. Said fees shall be the Purchaser's obligation, shall be a lien on the Property, and shall be collected by Account Servicing Agent from Purchaser in order for the Purchaser to avoid the forfeiture. Account Servicing Agent shall deposit in the United States mail with proper postage affixed, a copy of the Notice in an envelope addressed to Purchaser at the last address filed with Account Servicing Agent and mail a copy to each person claiming under such Purchaser by instrument of record.
If Purchaser fails to comply with the terms of this Agreement before the expiration of twenty days from the date said copy of the Notice was deposited in the United States mail, Account Servicing Agent is authorized and directed to deliver to Seller the documents and money deposited under this Agreement and record an Affidavit of Completion of forfeiture executed by Account Servicing Agent, which affidavit shall be binding upon all parties, their



heirs, successors and assigns. All funds paid to Account Servicing Agent in compliance with any forfeiture notice shall be in cash, cashier's check or money order. Personal checks will not be accepted. In the event a forfeiture is enforced, Purchaser shall forfeit any and all rights and interests hereunder in and to the real property and appurtenances, and Purchaser shall surrender forthwith peaceable possession of the Property and shall forfeit to Seller as liquidated damages, any and all payments made hereunder, together with any and all improvements placed on or in the Property. This provision shall not affect any other lawful right or remedy of Seller.

If Seller and Purchaser employ a Third Party as their Account Servicing Agent, Seller and Purchaser, and each of them, promise to pay promptly all costs, damages, attorney's fees, expenses and liabilities which, in good faith and without fault on its part, Account Servicing Agent may incur or sustain in connection with this Agreement and in connection with any court action arising out of this Agreement. Seller and Purchaser do indemnify and hold Account Servicing Agent harmless against all such costs, damages, attorney's fees, expenses and liabilities.

(11) This Agreement applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors, and assigns. In this Agreement, whenever the context so requires, the masculine gender includes the feminine and neuter, and the singular number includes the plural.

(12) If any provision hereof is void or unenforceable by reason of any applicable law, the remaining portions of this Agreement shall not be affected and shall remain in full force and effect.

(13) ADDITIONAL TERMS AND CONDITIONS:

The Buyer agrees to maintain the property in good condition and repair, not to commit or permit waste of the property, and not to alter the design or structural character of any building or improvements without the written consent of the Seller. The Buyer also agrees to keep the property free of termites and dry rot and shall maintain insurance against termite damage during the period of this Agreement; to keep the landscaping in good condition; and to keep the property free of rubbish and other unsightly condition. The Seller may, with one week's written notice, enter and inspect the property as deemed necessary.

SELLER

_____
ROGER IOSSI

_____
JACQUELINE IOSSI

PURCHASER

_____
Linda Thunn, a single woman



STATE OF ARIZONA )
) ss.
County of _Maricopa_ )

This _29_ day of _Jun_____, 2003, Roger Iossi and Jacqueline Iossi, personally appeared before me and being duly sworn, acknowledged they executed the foregoing Agreement for sale in such capacities for and on behalf of such Trust.

_____
Notary Public

My Commission Expires:

_____

**OFFICIAL SEAL**
**P.J. MARINO**
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Feb. 15, 2003

STATE OF ARIZONA )
) ss.
County of _Maricopa_ )

This _30_ day of _Jun_____, 2003, Linda Thunn, a single woman, personally appeared before me and being duly sworn, acknowledged she executed the foregoing Agreement for Sale on her own behalf as Buyer.

_____
Notary Public

My Commission Expires:

_____

**OFFICIAL SEAL**
**P.J. MARINO**
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Feb. 15, 2003

NOTE: The parties are cautioned that by completing and executing this document, legal rights, duties and obligations are created. By signing, the parties acknowledge that they have been advised to seek and obtain independent legal counsel as to all matters contained in the within document prior to signing same and that said parties have obtained advice or choose to proceed without same.

Recorded at the request of *Capital Title Agency Inc.*
when recorded mail to

CAPITAL TITLE AGENCY-ACCOUNT SERVICING
122 North Cortez Street, #3
Prescott, Arizona 86301

Account No. 01030056

# MODIFICATION TO AGREEMENT FOR SALE AND ASSUMPTION AGREEMENT

THIS AGREEMENT, made this _____ day of NOVEMBER, 2005, by and between ROGER I. IOSSI and JACQUELINE B. IOSSI, Trustees of the IOSSI FAMILY TRUST dated 10/29/93 as amended, as Seller, and LINDA THUNN, a single woman, as Buyer and MICHAEL S. DONAHUE, as Assuming Buyer, under that certain Agreement for Sale, dated January 31, 2003 recorded in Document No. 2003-0125538 on January 31, 2005 records of Maricopa County, Arizona, covering the following described real property:

Lots Twelve (12) and Thirteen (13), WEST BUGLE, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, in Book 46 of Maps, page 13.

WHEREAS, Seller and Buyer and Assuming Buyer are desirous of modifying the terms of the original Agreement for Sale referred to above as follows:

The Seller hereby consents to the transfer of the Property to, and the assumption, without release of Buyer, of the sums due hereunder by MICHAEL S. DONAHUE, and further consents to the further encumbrance of the Property by a Note and Deed of Trust from the Assuming Buyer to the Buyer in the amount of $88,997.36, with interest at the rate of 5.85% per annum and all due and payable in 2016. It is agreed however that the "Due on Sale or Further Encumbrance provision in the original Agreement for Sale is hereby reinstated and shall remain in full force and effect for any other sale or encumbrance. Assuming Buyer hereby assumes and agrees to pay all sums due under the Agreement for Sale, as modified hereby, and further agrees to be bound by all of the terms and conditions contained in the Agreement for Sale, as modified hereby.

The unpaid principal balance of $266,002.64 shall be payable in monthly installment of $1965.72, due on the same day of each and every month, beginning December 1, 2005, with interest on all unpaid principal at the rate of 7.5% per annum from November 1, 2005, the interest to be first deducted from the regular monthly installments and the balance to be applied upon the principal. There shall be a prepayment penalty of 20% of the unpaid balance in the event of a prepayment in part or in full prior to February 1, 2018. In addition to the regular monthly installments, the Assuming Buyer will pay 1/12th of the annual taxes and insurance premiums and assessments as provided in the original Agreement for Sale.

All other terms and conditions contained in the original Agreement for Sale that have not been modified hereby shall remain in full force and unchanged.

IT IS UNDERSTOOD AND AGREED that all other terms and/or conditions of the above mentioned Deed of Trust, including subsequent modifications prior to the date hereof, if any, shall remain in full force and effect without change, except as hereinabove otherwise specifically provided.

Time is of the essence of this modification, including any prior modifications and the aforementioned original Deed of Trust.

Dated November ____, 2005